UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**BRANDON SCOTT LAVERGNE** : **DOCKET NO. 6:14-cv-2805**
    **D.O.C. # 424229**     **SECTION P**

**VERSUS** : **JUDGE WALTER**

**N. BURL CAIN** : **MAGISTRATE JUDGE KAY**

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus and final amended memorandum in support thereof [docs. 1, 46] filed by Brandon Scott Lavergne ("petitioner"), who is represented by counsel in this matter. The petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola, Louisiana. N. Burl Cain ("respondent"), former warden at Angola, opposes the petition. Doc. 67. The petitioner has adopted his reply to a previously-filed answer as his final reply. Docs. 82, 83. Accordingly, the matter is now ripe for review.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

# I.
## BACKGROUND

### A. Conviction

The petitioner was charged by bill of indictment on July 18, 2012, with two counts of first degree murder in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana. Doc. 80, att. 1, p. 82. The first count related to the murder of Lisa Pate on or about July 3, 1999, and the second to the murder of Michaela Shunick on or about May 19, 2012. *Id.* On August 17, 2012, he appeared with counsel at a change of plea hearing. *Id.* at 16–17; doc. 80, pp. 82–84. At this hearing he presented no challenge to the accuracy of facts offered by the state concerning both murders. Doc. 80, pp. 70–75 (Pate) and 75–83 (Shunick).

The terms of the plea arrangement, in which the petitioner had agreed to assist the state with certain tasks, the state had agreed not to seek the death penalty, and the petitioner consented to sentences of life imprisonment without parole and waived his right to a sentencing hearing, were entered into the record. *Id.* at 83–88. The court then accepted the petitioner's guilty pleas as to both counts and imposed two concurrent sentences of life imprisonment without benefit of probation, parole, or suspension of sentence. *Id.* at 88.

### B. State Collateral Review

The petitioner did not file a direct appeal and instead began seeking collateral review through a pro se application for post-conviction relief, filed in the state district court on December 18, 2012, with a supplemental memorandum filed on January 2, 2013. *See* doc. 80, att. 1, pp. 3–5 (original application); doc. 80, pp. 23–33 (supplemental memorandum). This application was rejected by the court as improperly filed. Doc. 80, pp. 34–35. The petitioner then filed an application for post-conviction relief, received in the trial court on or about February 7, 2013, and denied by the state district court with written reasons. *See* doc. 25, att. 2, pp. 7–23; doc. 79, pp.

57–66. In its ruling the state district court found that he had raised claims relating to the court's jurisdiction, the voluntariness of his plea, the Freedom of Information Act, and ineffective assistance of counsel. Doc. 79, pp. 57–58. However, petitioner maintains that he also raised a claim of excessive sentence within his claim challenging the voluntariness of his plea. *See* doc. 25, att. 2, pp. 18–20.

The petitioner sought review in the Louisiana Third Circuit Court of Appeal twice, under case number 13-KH-488 and 13-KH-695. The Third Circuit denied writs on 13-KH-488 on May 17, 2013, "on the showing made" due to the petitioner's failure to include necessary documentation, and on 13-KH-695 on June 18, 2013, finding no error to the trial court's ruling. Doc. 1, att. 2, p. 34; doc. 25, att. 3, p. 5. The petitioner then sought review under both case numbers in the Louisiana Supreme Court. That court issued the following ruling as to both case numbers on September 12, 2014: "Denied. Repetitive. Cf. La.C.Cr.P. art. 930.4(D)."[1] Doc. 25, att. 4, p. 12; *State ex rel. Lavergne v. State*, 147 So.3d 702 (La. 2014). He sought reconsideration, which the court denied on October 31, 2014. *State ex rel. Lavergne v. State*, 152 So.3d 143 (La. 2014).

On February 11, 2015, while the instant petition was already pending, the petitioner filed a "supplemental" application for post-conviction relief in the state district court. Doc. 69, pp. 88–100; doc. 70, pp. 1–27. There he made several allegations of ineffective assistance of counsel and prosecutorial misconduct, including that the plea deal had subjected him to a "cruel and unusual sentence." Doc. 69, p. 100. The state district court stated that it would not consider the other claims, as those were previously raised and considered, but that it would consider the illegal sentence claim. *Id.* at 82. It then held that the petitioner was not entitled to relief on that claim because a life

---

[1] The respondent contends that the Louisiana Supreme Court's denial of writs on the application for post-conviction relief actually came on November 15, 2013. *See* doc. 67, att. 1, p. 2; doc. 73, p. 610. That decision, however, relates to Case No. 13-KH-315, which was an application for writs to the Third Circuit relating to the district court's denial of the petitioner's Motion for Discovery. *See* doc. 1, att. 3, p. 38.

sentence did not exceed the maximum allowed by law for first degree murder. *Id.* The petitioner sought review in the Third Circuit, which denied same and made the following remarks with respect to his sentence claims:

> Insofar as Relator asserts his sentences are illegal, Relator's petition to the trial court did not contain any argument cognizable as an actual illegal sentence claim. The statutory delays for Relator's opportunities to seek review of his sentences through appeal, motion to reconsider sentences, and motion to amend sentences have lapsed. Moreover, Relator received bargained-for sentences placed into the record at the time of his plea; therefore, insofar as Relator may actually be challenging his sentences instead of the underlying convictions, Relator is precluded from so doing.

*Id.* at 49–50. He then sought review in the Louisiana Supreme Court, which denied same on October 30, 2015, and noted that he had not shown that the district court erred when it determined that his claims were repetitive. *State ex rel. Lavergne v. Lavergne*, 178 So.3d 559 (La. 2015), *reconsideration denied*, 184 So.3d 699 (La. 2016).

### C. Federal Habeas Petition

The instant petition was filed on September 18, 2014, while the petitioner was proceeding *pro se*. *See* doc. 1, p. 6. He is now represented by counsel, and makes the following claims in support of his request for habeas relief:

1. The sentences are cruel and unusual.

2. The guilty pleas are void because the Parish of Lafayette exceeded its authority in indicting him with the murder of Lisa Pate when none of the elements of the offense occurred in that parish.

3. Trial counsel was ineffective for permitting the petitioner to enter a plea to a grossly excessive sentence, when trial counsel should have known that the parish and trial court lacked jurisdiction and authority to commence prosecution for the murder of Lisa Pate.

Doc. 46, p. 4. He waives all claims from previous memoranda other than the three above. *Id.*

## II.
### STANDARDS ON HABEAS REVIEW

#### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

#### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d

532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### *2. Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default principles apply with equal force in capital cases. *Smith v. Murray*, 106 S.Ct. 2661, 2668–69 (1986). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As

the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
### LEGAL ANALYSIS

#### A. Timeliness

Because the petitioner did not seek relief through a direct appeal, his conviction became final when his time for filing a notice of appeal expired. *Roberts v. Cockrell*, 319 F.3d 690, 694–95 (5th Cir. 2003). Under Louisiana law, then, his conviction became final on September 17, 2012. La. C. Cr. P. art. 914. The petitioner began to seek post-conviction relief on or about December 18, 2012, but this application and the supplement that followed the following month were rejected as improperly filed. Accordingly, the petitioner is not entitled to statutory tolling under § 2244(d)(2) for the time those filings were pending. *Larry v. Dretke*, 361 F.3d 890, 894–96 (5th Cir. 2004). Instead, tolling began with the proper filing of an application for post-conviction relief on or about February 7, 2013, by which time **143 days** had accrued toward the one-year limit.

There being no indication that the motion was untimely, the limitations period remained tolled until the Supreme Court's ruling on the motion for reconsideration on October 31, 2014. *See Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001) (petitioner's "suggestion for reconsideration" to state supreme court, deemed to be properly filed, extended statutory tolling under § 2244(d)(2) while that request was under consideration). The petitioner had already filed the instant petition by that point, and so no extra time accumulated. The instant petition is therefore timely.

### B. Exhaustion and Procedural Default

Here the three claims asserted in this petition were all properly exhausted in the state courts. The ineffective assistance and jurisdiction claims were both raised and exhausted through the petitioner's first attempt at post-conviction relief. The sentence claim was not properly raised in the petitioner's first attempt at post-conviction relief, but was clearly asserted in the application filed while this proceeding was already underway. A federal court may grant habeas relief on a claim that was not exhausted when the petition was filed, but becomes exhausted at some point before the court's ruling. *Bucknell v. Thaler*, 488 Fed. App'x 851, 853 (5th Cir. 2012) (citing *Bufalino v. Reno*, 613 F.2d 568, 571 (5th Cir. 1980)). Because the Louisiana Supreme Court has now ruled on the claim, exhaustion no longer poses a bar to federal habeas relief on that claim.

As for procedural default, the Louisiana Supreme Court's ruling ("Denied. Repetitive. Cf. La.C.Cr.P. art. 930.4(D).") on the petitioner's first attempt at post-conviction relief appears to impose procedural grounds for denial. *See State ex rel. Lavergne v. State*, 147 So.3d 702 (La. 2014). That ruling considered two petitions, however, and so the reference to "repetitive" applications under Article 930.4(D) of the Louisiana Code of Criminal Procedure probably applied

to the petitioner's attempt to seek review of the same petition through two separate cases.[2] Furthermore, Article 930.4(D) is not grounds for procedural default – although it prevents further review of a claim, it does not undo any merits ruling on the issue in a prior proceeding. *Pedelahore v. Tanner*, 2012 WL 4970684, at *9 (E.D. La. Sep. 24, 2012). Instead, the court should look through the procedural bar imposed by Article 930.4(D) and consider the prior state court adjudication as the decision under § 2254(d) review. *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (describing procedure under Article 930.4(A), which bars claims already raised on direct appeal). Thus, there is no procedural default imposed – we presume that the Louisiana Supreme Court's reference to Article 930.4(D) applied only to the petitioner's attempt to seek review through the second of his two writ applications to the Third Circuit, and that the court simply denied review without written reasons as to the first writ application.

### C. Merits Consideration

#### 1. *Excessive sentence*

The petitioner first alleges that his right to be free from cruel and unusual punishment, under the Eighth Amendment, was violated by the life sentences imposed. No sentence is *per se* constitutional. *Solem v. Helm*, 103 S.Ct. 3001, 3009–10 (1983). However, determination of prison sentences is a legislative prerogative that is the primary province of the legislatures rather than the courts. *Rummel v. Estelle*, 100 S.Ct. 1133, 1139–40 (1980). Accordingly, sentences that fall within statutory limits are granted substantial deference. Such a sentence will not be overturned on habeas review "unless it is grossly disproportionate to the gravity of the offense." *Lott v. Miller*, 2008 WL 4889650 at *9 (E.D. La. Nov. 3, 2008) (citing *Harmelin v. Michigan*, 111 S.Ct. 2680 (1991)).

---

[2] Under Article 930.4(D), "[a] successive application for post-conviction relief shall be dismissed if it fails to raise a new or different claim."

In the Fifth Circuit, excessive sentence claims are analyzed under the framework set forth in *McGruder v. Puckett*, 954 F.2d 313 (5th Cir. 1992). First, the court weighs the gravity of the offense against the severity of the sentence. *Id.* at 316. Then, if the court determines that the sentence is grossly disproportionate to the offense, it compares the sentence in the instant case to sentences for similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. *Id.* If the court does not find that the sentence is grossly disproportionate to the offense, however, no further inquiry is required and the court instead "defer[s] to the will of" the legislature. *United States v. Gonzales*, 121 F.3d 928, 942–43 (5th Cir. 1997), *overruled in part on other grounds by United States v. O'Brien*, 130 S.Ct. 2169, 2180 (2010), *as stated in United States v. Johnson*, 398 Fed. App'x 964, 968 (5th Cir. 2010). As the Supreme Court has noted, the disproportionality inquiry is inherently subjective. *Rummel*, 100 S.Ct. at 1138–39. Outside of the capital punishment context, successful proportionality challenges are "exceedingly rare." *Id.*

Here the petitioner complains not of the length of sentence, but alleges that, as a result of "a single line in [his] plea [a]greement and associated Statement in Support of Plea," as accepted by the state district court, he has been kept in solitary confinement for almost the entirety of his sentence. Doc. 46, p. 17. On page 5 of his plea agreement, it is explained that the court shall impose sentences of life imprisonment, to be served concurrently, and that the defendant agrees to specific conditions for that sentence. Doc. 1, att. 2, p. 26. These include that "[t]he defendant shall serve his life sentence in restricted custody in accordance with the rules and regulations of the Louisiana Department of Corrections." *Id.*

The Third Circuit, as the last court to render a decision on the merits for this claim, found that the petitioner was precluded from challenging his sentence because it was part of his plea arrangement. Doc. 69, pp. 49–50. We note, however, that the sentence imposed by the state district

court was for the term – life imprisonment without parole, the minimum required under Louisiana law for a first degree murder conviction. La. Rev. Stat. 14:30(C). The state district court made no requirement of solitary confinement in imposing the sentence.[3] Accordingly, as the respondent argues, any imposition of solitary confinement on the petitioner is a condition of confinement rather than part of his sentence and must be attacked in a civil rights claim.

We now review the circumstances of the crimes, as presented at the plea hearing, to determine if there is any basis for finding that the statutory minimum was grossly disproportionate. The state announced, and Lavergne did not contest, that Lavergne had enticed Pate away from Lafayette to a location in another town, refused her request to leave, and then beaten her to death whenever she attempted to take his car keys and flee. Doc. 80, pp. 70–75. The state also announced, and Lavergne again did not contest, that Lavergne had followed Michaela Shunick after observing her on her bicycle from his truck, deliberately knocked her off of the bicycle and pulled her into his truck, taken her to an isolated location to dispose of the body when he believed that she had died of knife wounds in the ensuing struggle, and then shot her in the head when she recovered and attacked him again in a bold attempt to save her own life. *Id.* at 75–83. Though Lavergne now claims that he did not acquiesce to the state's allegations, the record shows that he admitted to his guilt for both crimes. *Id.* at 70–83. He also signed a statement in support of plea, affirming his guilt **and** that the factual basis provided "is indeed true, correct, and accurate." Doc. 80, att. 1, pp. 24–33. The violence and cruelty of both deaths provide no justification for finding the mandatory minimum sentences for these crimes to be grossly disproportionate. Thus, Lavergne can show no right to federal habeas relief on this claim.

---

[3] The only terms of the agreement recited before the court included the petitioner's awareness of the mandatory life sentences that would result from his conviction and the things he had already done – assisted in locating Shunick's body, participated in a recreation of the crime, and undergone an examination of his capacity to proceed – in order for the state to agree not to seek the death penalty. Doc. 80, pp. 83–88.

### 2. *Venue/jurisdiction challenge*

Lavergne next alleges that the elements of the Lisa Pate murder occurred outside of Lafayette Parish, and that that parish was thus without jurisdiction to indict him, prosecute him, or preside over his conviction and sentencing for the murder.

Venue, as determined under state law, confers jurisdiction for Louisiana criminal courts. *State v. Williams*, 817 So.2d 470, 472 (La. Ct. App. 3d Cir. 2002). The Supreme Court has made clear that "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (citing *Estelle v. McGuire*, 112 S.Ct. 475 (1991)). Such errors include challenges to a state criminal court's application of its rules of venue.[4] *See Taylor v. Cain*, 2015 WL 1258762, at *2 (W.D. La. Mar. 17, 2015) (rejecting habeas claim alleging that state court lacked jurisdiction over case because state failed to prove where the crime occurred); *Surratt v. Cain*, 2008 WL 2073995, at *2–*3 (W.D. La. Mar. 11, 2008) (rejecting improper venue challenge in § 2254 petition for being based solely in Louisiana law); *Ololade v. Dretke*, 2006 WL 801229 (S.D. Tex. Mar. 29, 2006) (same, involving a Texas venue provision). Accordingly, Lavergne can show no right to federal habeas relief based on this claim.

### 3. *Ineffective assistance*

Finally, Lavergne complains of ineffective assistance of counsel based on trial counsel's recommendation that he accept a plea deal without challenging the jurisdictional defects alleged above. Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the

---

[4] The petitioner cites as precedent the Fifth Circuit's statement in *Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir. 1983), that "[a]n absence of jurisdiction in the convicting court is . . . a basis for federal habeas corpus relief cognizable under the due process clause." Subsequent Supreme Court precedent emphasizing that habeas relief does not lie for errors of state law, as noted supra, should make clear that *Lowery* does not provide a basis for questioning the more recent decisions in *Taylor*, *Suratt*, and *Ololade*. *See also Lavernia v. Lynaugh*, 845 F.2d 493, 495 (5th Cir. 1988) ("Federal habeas courts are without authority to correct simple misapplications of state criminal law or procedure"); *Manning v. Warden*, 786 F.2d 710, 711–12 (5th Cir. 1986) ("[W]hether the state followed its own procedure is not the concern of a federal *habeas* court.")

Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

Under Louisiana law, as noted above, venue is jurisdictional in criminal cases. Venue is proper in a criminal case where any act or element of an offense occurred. La. C. Cr. P. art. 611. Furthermore, it is not an essential element of the case which must be proven beyond a reasonable

doubt. *Id.* at art. 615. Rather, the element is decided by the judge alone in advance of trial and must only be proven by a preponderance of the evidence. *Id.*

Here the respondent asserts that the aggravating element that elevated Lisa Pate's homicide to first degree murder was her second degree kidnapping, as shown through the factual basis which the petitioner failed to contest at the plea hearing, and in the statement in support of plea which he signed and affirmed was accurate. Doc. 80, pp. 70–72; doc. 80, att. 1, pp. 24–25. The respondent thus maintains, as the state district court found, that venue was proper over the murder of Lisa Pate because it was in Lafayette that Lavergne met Pate and enticed and persuaded her to go to the location in Acadia Parish where she was killed. Doc. 80, pp. 70–72; doc. 80, att. 1, pp. 24–25.

Under Louisiana law, kidnapping includes "[t]he enticing or persuading of any person to go from one place to another." La. Rev. Stat. § 14:44.1(B)(2). The crime is elevated to second degree kidnapping with any of several aggravating circumstances. *See* La. Rev. Stat. § 14:44.1(A)(3). First degree murder involves the killing of a human being with specific intent to kill or inflict great bodily harm under certain aggravating circumstances, including when the offender is engaged in the perpetration or attempted perpetration of a second degree kidnapping. La. Rev. Stat. § 14:30(A)(1).

The Fifth Circuit "has made clear that counsel is not required to make futile motions or objections" in order to stave off ineffective assistance claims. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The petitioner fails to show why the underlying felony should not be considered an element of the first degree murder, or to demonstrate any basis for concluding that an element of the kidnapping was not accomplished in Lafayette Parish after his own admission that he enticed and persuaded Lisa Pate to go from that parish to Acadia Parish. He demonstrates no merit to any venue challenge counsel might have brought and thus no deficient performance through counsel's

advice that he accept the plea. Accordingly, he can show no mistake in the state court's ruling and no right to federal habeas relief under this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 10th day of April, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE